**E-FILED**
Thursday, 26 October, 2006  02:19:20 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

**FILED**

OCT 2 6 2006

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>BUNGE NORTH AMERICA, INC.,<br>BUNGE NORTH AMERICA (EAST), L.L.C.,<br>BUNGE NORTH AMERICA (OPD WEST), INC.,<br>    AND<br>BUNGE MILLING, INC.<br><br>    Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION <br> ) NO. <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges:

### NATURE OF THE ACTION

1.    This is a civil action brought against Defendants, Bunge North America, Inc. ("Bunge"), and its wholly owned subsidiaries Bunge North America (East), L.L.C. ("Bunge East"), Bunge North America (OPD West), Inc. ("Bunge OPD West"), and Bunge Milling, Inc. ("Bunge Milling"), for violations of the following statutory and regulatory requirements of the Clean Air Act (the "Act"), 42 U.S.C.

2

§ 7401 et seq. at their twelve (12) processing plants at eleven (11) facilities nationwide:  Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, Prevention of Significant Deterioration ("PSD"); certain New Source Performance Standards ("NSPS"), 42 U.S.C. § 7411, 40 C.F.R. Part 60; Title V of the Act, 42 U.S.C. §§ 7661-7661f, Permits; the state implementation plans ("SIPs") for Louisiana, Indiana, Illinois, Kansas, Ohio, Mississippi, Iowa, and Alabama which incorporate and/or implement the above-listed federal requirements; and SIP permitting programs for construction and operation of new and modified stationary sources of air pollution.

2.    The United States seeks an injunction ordering each Defendant to comply with the above-cited Clean Air Act requirements and regulations promulgated thereunder, and civil penalties for each Defendant's past and ongoing violations.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction of the subject matter of this action pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345.

4.    Venue is proper in this District pursuant to 42 U.S.C. § 7413(b) and 28 U.S.C. § 1391 (b) and (c), because

3

Defendant Bunge Milling owns and operates a facility in this District.

### NOTICES

5.    The United States provided notice of the violations alleged herein to each of the eight (8) states where the Defendants' facilities are located, in accordance with Section 113 of the Act, 42 U.S.C. § 7413.

6.    The 30-day period established in Section 113 of the Act, 42 U.S.C. § 7413, between the notice of violation provided by the United States and the commencement of this civil action has elapsed.

### THE DEFENDANTS

7.    Bunge is a New York corporation and a subsidiary of Bunge N.A. Holdings, Inc.  Bunge is a leading oilseed processor and corn dry miller and a leading U.S. exporter of soybeans and soybean-derived products (meal and oil).  Bunge East, a Delaware limited liability company, Bunge OPD West, a Delaware corporation, and Bunge Milling, an Illinois corporation, are wholly-owned subsidiaries of Bunge.

8.    Each Defendant is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

4

9.    At all times relevant to this Complaint:

    a.    Bunge owned and operated soybean processing plants located in Decatur, Alabama; Marks, Mississippi; Cairo, Illinois; and Destrehan, Louisiana.

    b.    Bunge East owned and operated soybean processing plants located in Decatur, Indiana; Delphos, Ohio; Marion, Ohio; and Morristown, Indiana.

    c.    Bunge OPD West owned and operated soybean processing plants located in Emporia, Kansas and Council Bluffs, Iowa.

    d.    Bunge Milling owned and operated a soybean processing plant and a corn dry mill extraction plant located in Danville, Illinois.

## STATUTORY AND REGULATORY BACKGROUND

10.    The Clean Air Act is designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population.  42 U.S.C. § 7401(b)(1).

11.  Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to promulgate regulations

5

establishing primary and secondary national ambient air quality standards ("NAAQS" or "ambient air quality standards") for certain criteria air pollutants. The primary NAAQS are to be adequate to protect the public health, and the secondary NAAQS are to be adequate to protect the public welfare, from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air. As pertinent to this Complaint, criteria pollutants include nitrogen oxides ("$NO_x$"), ozone, sulfur dioxide ("$SO_2$"), carbon monoxide ("CO"), particulate matter ("PM"), and particulate matter with an aerodynamic diameter less than or equal to ten micrometers ("$PM_{10}$").

12. Section 110 of the Act, 42 U.S.C. § 7410, requires each state to adopt and submit to EPA for approval a State Implementation Plan ("SIP") that provides for the attainment and maintenance of the NAAQS.

13. Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. These designations have been approved by EPA and are

6

published at 40 C.F.R. Part 81.  An area that meets the NAAQS for a particular pollutant is classified as an "attainment" area; one that does not is classified as a "non-attainment" area.

### Prevention of Significant Deterioration

14.  Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration ("PSD") of air quality in those areas designated as attaining the NAAQS standards.  These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision-making process. These provisions and their implementing regulations are referred to herein as the "PSD program."

15.  Section 165(a) of the Act, 42 U.S.C. § 7475(a), prohibits the construction and subsequent operation of a major emitting facility in an area designated as attainment unless a PSD permit has been issued.  Section 169(1) of the Act, 42 U.S.C. § 7479(1), defines "major emitting facility"

7

generally as a source with the potential to emit 250 tons per year ("TPY") or more of any air pollutant.

16.  As set forth at 40 C.F.R. § 52.21(k), the PSD program generally requires a person who wishes to construct or modify a major emitting facility in an attainment area to demonstrate, before construction commences, that construction of the facility will not cause or contribute to air pollution in violation of any ambient air quality standard or any specified incremental amount.

17.  Any major emitting source in an attainment area that intends to construct a major modification must first obtain a PSD permit.  40 C.F.R. § 52.21(a).  "Major modification" is defined as any physical change in or change in the method of operation of a major stationary source that would result in a significant net emission increase of any criteria pollutant subject to regulation under the Act. Id. § 52.21(b)(2)(i).  "Significant," in reference to a net emissions increase or the potential of a source to emit any of the following criteria pollutants, means a rate of emissions that would equal or exceed: 40 TPY of NOx; 40 TPY of volatile organic compounds ("VOCs"), precursor to ozone; 40 TPY of $SO_2$, 100 TPY of CO, 15 TPY of $PM_{10}$, or 25 TPY of PM.  40 C.F.R. § 52.21(b)(23)(i).

8

18.   A new major stationary source or a major
modification in an attainment area is required to install
and operate best available control technology ("BACT") for
each pollutant subject to regulation under the Act that it
would have the potential to emit in significant quantities.
40 C.F.R. § 52.21(j).

19.   Section 161 of the Act, 42 U.S.C. § 7471, requires
state implementation plans to contain emission limitations
and such other measures as may be necessary, as determined
under the regulations promulgated pursuant to these
provisions, to prevent significant deterioration of air
quality in attainment areas.

20.   A state may comply with Section 161 of the Act
either by being delegated by EPA the authority to enforce
the federal PSD regulations set forth at 40 C.F.R. § 52.21,
or by having EPA approve the state's own PSD regulations
(which must be at least as stringent as those set forth at
40 C.F.R. § 51.166) as part of the state's SIP.  Each state
identified in Paragraph 1 of this Complaint has either a
delegated or an approved PSD program.

### Minor New Source Review

21.   Section 110(a)(2)(c) of the Act, 42 U.S.C. §
7410(a)(2)(c), requires that each SIP contain a basic

9

program applicable to all areas of the state for the pre-construction review and permitting of new and modified stationary sources as necessary to assure attainment and maintenance of the NAAQS.

22. EPA regulations at 40 C.F.R. § 51.160 require that each SIP contain such a generally applicable program for pre-construction review and permitting.

23. As reflected in the relevant sections of 40 C.F.R. Part 52, each of the eight states in which Defendants own and operate plants identified in Paragraph 9 has adopted such a program, and EPA has approved it into the relevant SIP.  In each state, the approved program regulates through the permitting process both the construction and operation of new and modified stationary sources.  In some states, the program requires the payment of emission fees in proportion to emission levels.

### New Source Performance Standards

24. Section 111(b)(1)(A) of the Act requires EPA to publish and periodically to revise a list of categories of stationary sources including those categories that, in EPA's judgment, cause or contribute significantly to air pollution which may reasonably be anticipated to endanger public health or welfare.  Once a category is included on the list,

10

Section 111(b)(1)(B) of the Act requires EPA to promulgate a federal standard of performance for new sources within the category, also known as a New Source Performance Standard ("NSPS"). 42 U.S.C. § 7411(b)(1)(A), (B).

25.  After promulgation of a NSPS, Section 111(e) of the Act makes it unlawful for any owner or operator of any new source subject to the NSPS to operate the source in violation of the standard.  42 U.S.C. § 7411(e).

26.  EPA's regulations at 40 C.F.R. Part 60, Subpart A, contain general provisions applicable to all NSPS sources, including the obligation to conduct performance tests at each subject source.  Subpart A provides that a new standard of performance shall apply to any affected facility at which construction commenced after the promulgation of the standard, or if earlier, after the date of publication of a proposed standard.  Subpart A of the EPA's NSPS regulations also requires operators to provide notice of the date of construction and operation of an affected facility. 40 C.F.R. § 60.7.

27.  EPA's regulations at 40 C.F.R. § 60.2 define an "affected facility," with reference to a stationary source, as any apparatus to which a standard is applicable.

11

## Title V

28.   Section 502(a) of the Act, 42 U.S.C. § 7661a(a),
and 40 C.F.R. § 70.7(b) provide that, after the effective
date of any permit program approved or promulgated under
Title V of the Act, no source subject to Title V may operate
except in compliance with a Title V permit.

29.   All sources subject to EPA's regulations at 40
C.F.R. Part 70 are required to have a permit to operate that
assures compliance by the source with all applicable
requirements.   40 C.F.R. §§ 70.1(b), § 70.2.

30.   Section 503(c) of the Act, 42 U.S.C. § 7661b(c),
requires any person required to have a permit under Title V
timely to submit an application for a permit.

31.   An owner or operator is required to submit a
timely and complete permit application in accordance with
the requirements of 40 C.F.R. Part 70.   40 C.F.R. § 70.5(a).

32.   U.S. EPA granted interim approval to the Illinois
Title V operating permit program on March 7, 1995.   The
program became effective on March 7, 1996.

33.   The Illinois Title V operating permit program
provides that sources subject to the program submit a
complete application within one year.

12

34.  Section 113(a)(3) of the Act, 42 U.S.C. §
7413(a)(3), authorizes the Administrator to initiate an
enforcement action whenever, among other things, the
Administrator finds that any person has violated or is in
violation of a requirement or prohibition of Title V of the
Act, or any rule promulgated, issued or approved under Title
V of the Act.

## Illinois State Implementation Plan

35.  Pursuant to Section 110 of the Act, 42 U.S.C. §
7410, EPA approved sections of the Illinois Administrative
Code identified at 40 C.F.R. § 52.720, which are commonly
referred to as the Illinois SIP.  See 37 Fed. Reg. 10862,
May 31, 1972.  EPA approved Illinois' Operating Permits
Program as consistent with the requirements of the Act,
Title V, at 40 C.F.R. 70, Appendix A.  See 66 Fed. Reg.
62949, December 4, 2001.

36.  Pursuant to EPA's approval of the Illinois
Operating Permits Program, certain air permits issued by
Illinois are federally enforceable.  It is unlawful for any
person to fail to comply with any approved provision of a
SIP or a federally enforceable permit.  42 U.S.C.
§§ 7413(a), (c); 40 C.F.R. § 52.23.

13

37. The approved Illinois SIP specifies that no person shall cause or threaten or allow the discharge or emission of any contaminant into the environment to cause or tend to cause air pollution or so as to prevent the attainment or maintenance of any applicable ambient air quality standard. 35 Ill. Adm.Code § 201.141.

38. The approved Illinois SIP provides that no person shall allow construction or modification of any new source or air pollution control device without obtaining a construction permit, 35 Ill. Adm.Code § 201.142, and that it is unlawful to operate any new source or new air pollution control equipment for which a construction permit is required, without first obtaining an operating permit, id. § 201.143.

39. Any violation of a permit condition issued pursuant to the approved Illinois SIP is a violation of the SIP. A violation of a SIP requirement is a violation of Section 113 of the Clean Air Act, 42 U.S.C. § 7413. As such, a violation of a permit condition is a violation of Section 113 of the Clean Air Act, 42 U.S.C. § 7413, for failure to comply with the federally-enforceable Illinois SIP.

14

## **FIRST CLAIM FOR RELIEF**
### **(PSD Violations at Soybean Processing and Corn Dry Mill Extraction Plants)**

40.  Paragraphs 1 through 39 are realleged and incorporated herein by reference.

41.  At all relevant times, Defendants owned and operated soybean processing and/or corn dry mill extraction plants at the locations specified for each Defendant in Paragraph 9.

42.  Defendants produce crude vegetable oil and meal products at their plants listed in Paragraph 9 by removing oil from the soybeans or corn germ through direct contact with an organic solvent comprised of hexane isomers.

43.  Sources of VOCs emissions at the plants identified in Paragraph 9 include the extractor vessels, the solvent recovery system, dryers and coolers, residual solvent in meal and oil products, leaking equipment components, storage tanks, and wastewater treatment equipment.

44.  One or more of each Defendant's plants identified in Paragraph 9 are major sources of VOCs, subject to the PSD requirements of 40 C.F.R. Part 52.

45.  EPA has conducted assessments of Defendants' plants, which included site inspections of certain of the plants, review of permitting history and emissions data, and

15

analysis of other relevant information obtained from Defendants concerning construction and operation of the facilities.  The United States alleges the following based on the results of EPA's assessments, information and belief:

46.  One or more of each Defendants' plants identified in Paragraph 9 are major emitting facilities as defined in Section 169(1) of the Act or have subsequently been modified to increase their emission of one or more criteria air pollutants over the 250 TPY threshold, which is defined as a "major modification" under 40 C.F.R. § 52.21(b)(1)(i)(c).

47.  Since the initial construction or major modification of the plants referred to in Paragraph 9, each Defendant has been in violation of Section 165(a) of the Act, 42 U.S.C. § 7475(a), of 40 C.F.R. § 52.21, and of the corresponding state implementation plans, by failing to undergo PSD review for numerous modifications which caused significant emissions increases of criteria pollutants, by failing to obtain a permit, and by failing to install the best available control technology for control of such criteria air pollutants.

48.  Unless restrained by an Order of the Court, these violations of the Act and the implementing regulations are likely to continue.

16

49.   As provided in 42 U.S.C. § 7413(b), each
Defendant's violations set forth in this claim for relief
subject that Defendant to injunctive relief and civil
penalties of up to $25,000 per day for each violation of the
Act prior to January 31, 1997, $27,500 per day for each
violation occurring on or after January 31, 1997 through
March 14, 2004, and $32,500 per day for each violation
occurring on or after March 15, 2004.  See 40 C.F.R. § 19
and 69 Fed. Reg. 7126 (February 13, 2004).

### SECOND CLAIM FOR RELIEF
### (NSPS violations)

50.   Paragraphs 1 through 39 are realleged and
incorporated herein by reference.

51.   Defendants' plants identified in Paragraph 9
include "stationary sources" within the meaning of Section
111(a)(3) of the Act, 42 U.S.C. § 7611(a)(3), and "new
sources," as defined at Section 111(a)(2) of the Act, 42
U.S.C. § 7411 (a)(2), which are "affected facilities"
subject to the performance standards of NSPS and are
therefore subject to the requirements of NSPS Subpart A.

52.   Bunge East and Bunge Milling own and operate
industrial-commercial-institutional steam generating units
that commenced construction, modification, or reconstruction
after June 19, 1984, with the heat input capacity from fuels

17

combusted in the steam generating unit of greater than 29
Megawatts ("MW") (100 million Btu/hour).

53.  Bunge East's and Bunge Milling's industrial-
commercial-institutional steam generating units described in
Paragraph 52 are subject to the performance standards of 40
C.F.R. §§ 60.40b through 60.49b (Part 60 Subpart Db).

54.  Bunge, Bunge East, and Bunge OPD West own and
operate small industrial-commercial-institutional steam
generating units that commenced construction, modification,
or reconstruction after June 9, 1989, with the heat input
capacity from fuels combusted in the steam generating unit
of 29 MW (100 million Btu/hour) or less, but greater than or
equal to 2.9 MW (10 million Btu/hour).

55.  Bunge's, Bunge East's, and Bunge OPD West's
industrial-commercial-institutional steam generating units
described in Paragraph 54 are subject to the performance
standards of 40 C.F.R. §§ 60.40c through 60.48c (Part 60
Subpart Dc).

56.  Bunge, Bunge East, Bunge OPD West, and Bunge
Milling own and operate volatile organic liquid storage
vessels, including petroleum liquid storage vessels, for
which construction, reconstruction, or modification
commenced after July 23, 1984.

18

57.   Bunge's, Bunge East's, Bunge OPD West's, and Bunge Milling's volatile organic liquid storage vessels described in Paragraph 56, including petroleum liquid storage vessels, are subject to the performance standards set forth in 40 C.F.R. §§ 60.110b through 60.117b (Part 60 Subpart Kb).

58.   Bunge, Bunge East, Bunge OPD West, and Bunge Milling own and operate grain terminals and storage elevators which commenced construction, modification, or reconstruction after August 3, 1978.

59.   Bunge's, Bunge East's, Bunge OPD West's, and Bunge Milling 's grain storage elevators described in Paragraph 58 are subject to the performance standards under 40 C.F.R. §§ 60.300 through 60.304 (Part 60 Subpart DD).

60.   Bunge and Bunge Milling own and operate coal preparation plants which process more than 200 tons per day and commenced construction or modification after October 24, 1974.

61.   Bunge's and Bunge Milling's coal preparation plants described in Paragraph 60 are subject to the performance standards under 40 C.F.R. §§ 60.250 through 60.254 (Part 60 Subpart Y).

62.   EPA has conducted assessments of Defendants' NSPS "affected facilities" described in Paragraphs 51 through 61.

19

Based on EPA's assessments, information and belief, the
United States alleges that Defendants failed to meet one or
more of the emissions testing, emissions monitoring,
operations monitoring, emissions limits, recordkeeping and
reporting standards set forth in 40 C.F.R. Part 60, Subparts
Db, Dc, DD, Kb, and/or Y, in violation of Section 111 of
the Act.

63.  Unless restrained by an Order of the Court, these
violations of the Act and the implementing regulations are
likely to continue.

64.  As provided in 42 U.S.C. § 7413(b), each
Defendant's violations set forth in this claim for relief
subject that Defendant to injunctive relief and civil
penalties of up to $25,000 per day for each violation of the
Act prior to January 31, 1997, $27,500 per day for each
violation occurring on or after January 31, 1997 through
March 14, 2004, and $32,500 per day for each violation
occurring on or after March 15, 2004.  See 40 C.F.R. § 19
and 69 Fed. Reg. 7126 (February 13, 2004).

### THIRD CLAIM FOR RELIEF
### (Violations of Minor NSR Provisions)

65.  Paragraphs 1 through 39 are realleged and
incorporated herein by reference.

20

66.  Each of Defendants' plants identified in Paragraph
9 is subject in whole or in part to one or more construction
and/or operating permits issued pursuant to an approved
minor source program described in Paragraphs 21 through 23
above.

67.  EPA has conducted assessments of Defendants'
plants as described in Paragraph 45 above.  The United
States alleges the following based on the results of EPA's
assessments, information and belief:

68.  Since initial construction at their respective
plants identified in Paragraph 9, Defendants have generated
emissions of various criteria air pollutants and have
engaged in diverse construction activities involving changes
in such emissions, air quality impacts, or both.

69.  By operating one or more of their plants
identified in Paragraph 9, Defendants have violated the
permitting programs that EPA has approved into the relevant
SIPs pursuant to section 110(a)(2)(c), 42 U.S.C.
§ 7410(a)(2)(c), and 40 C.F.R. § 51.160, by exceeding the
limits, terms and conditions in permits issued pursuant to
such programs, particularly with respect to VOCs and CO.

70.  By performing certain construction activities at
one or more of their plants identified in Paragraph 9,

21

Defendants have violated the permitting programs that EPA
has approved into the relevant SIPs pursuant to section
110(a)(2)(c), 42 U.S.C. § 7410(a)(2)(c), and 40 C.F.R.
§ 51.160, by failing to apply for and obtain necessary
permits prior to construction, by failing to represent as
necessary in its applications the emission levels or air
quality consequences of proposed construction, by failing to
provide sufficient information for full assessment of
emission fees, or some combination thereof.

   71.  Unless restrained by an Order of the Court, these
violations of the Act and implementing regulations are
likely to continue.

   72.  As provided in 42 U.S.C. § 7413(b), each
Defendant's violations set forth in this claim for relief
subject that Defendant to injunctive relief and civil
penalties of up to $25,000 per day for each violation of the
Act prior to January 31, 1997, $27,500 per day for each
violation occurring on or after January 31, 1997 through
March 14, 2004, and $32,500 per day for each violation
occurring on or after March 15, 2004.  See 40 C.F.R. § 19
and 69 Fed. Reg. 7126 (February 13, 2004).

23

80.   Bunge Milling's operation of the Danville facility without an operating permit issued by IEPA constitutes a violation of Section 502 of the Act and of 40 C.F.R. §§ 70.1(b) and 70.7(b).

81.   As provided in 42 U.S.C. § 7413(b), Bunge Milling's violations set forth in this claim for relief subject Bunge Milling to injunctive relief and civil penalties of up to $25,000 per day for each violation of the Act prior to January 31, 1997, $27,500 per day for each violation occurring on or after January 31, 1997 through March 14, 2004, and $32,500 per day for each violation occurring on or after March 15, 2004.  See 40 C.F.R. § 19 and 69 Fed. Reg. 7126 (February 13, 2004).

**FIFTH CLAIM FOR RELIEF**
**(SIP Violation at Danville, Illinois Facility)**

82.   Paragraphs 1 through 39 and 74 are realleged and incorporated by reference herein.

83.   Based on EPA's assessment of Bunge Milling's Danville, Illinois facility, information and belief, the United States alleges the following:

84.   Bunge Milling has caused, threatened or allowed the emissions of VOCs from its Danville soybean plant into the environment so as to cause or tend to cause air pollution in violation of the Illinois SIP, thereby

24

violating Section 110 of the Clean Air Act, 42 U.S.C.
§ 7410.

85.  For failure to obtain an operating permit as
required by the Illinois SIP, Bunge Milling violated the
approved Illinois SIP.  As such, Bunge Milling is violating
Section 110 of the Clean Air Act, 42 U.S.C. § 7410 for
failing to comply with the federally enforceable Illinois
SIP.

86.  As provided in 42 U.S.C. § 7413(b), Bunge
Milling's violations set forth in this claim for relief
subject Bunge Milling to injunctive relief and civil
penalties of up to $25,000 per day for each violation of the
Act prior to January 31, 1997, $27,500 per day for each
violation occurring on or after January 31, 1997 through
March 14, 2004, and $32,500 per day for each violation
occurring on or after March 15, 2004.  See 40 C.F.R. § 19
and 69 Fed. Reg. 7126 (February 13, 2004).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America,
respectfully requests that this Court:

A.    Order Bunge, Bunge East, Bunge OPD West, and Bunge
      Milling to immediately comply with the state and

25

federal statutory and regulatory requirements
cited in this Complaint, under the Clean Air Act;

B.    Order Bunge, Bunge East, Bunge OPD West, and Bunge
      Milling to take appropriate measures to mitigate
      the effects of their violations;

C.    Assess civil penalties against Bunge, Bunge East,
      Bunge OPD West, and Bunge Milling for up to the
      amounts provided by the Act; and

D.    Grant the United States such other relief as this
      Court deems just and proper.

                      Respectfully submitted,


                      _____
                      SUE ELLEN WOOLDRIDGE
                      Assistant Attorney General
                      Environment and Natural
                             Resources Division
                      U.S. Department of Justice


                      _____
                      STEVE C. GOLD
                      Senior Attorney
                      Environmental Enforcement
                             Section
                      Environment and Natural
                             Resources Division
                      U.S. Department of Justice
                      P.O. Box 7611
                      Washington, D.C. 20044-7611
                      (202) 514-2560

26

RODGER HEATON
United States Attorney
Central District of Illinois

By: _____
DAVID H. HOFF
Assistant United States
     Attorney
Central District of Illinois
201 South Vine Street
Suite 226
Urbana, Illinois  61802
(217) 373-5875


OF COUNSEL:

MARY T. MCAULIFFE
Associate Regional Counsel
U.S. EPA
Region 5
77 W. Jackson
Chicago, Illinois

CHARLIE GARLOW
Attorney-Advisor
U.S. EPA
Office of Regulatory Enforcement
(2248A)
1200 Pennsylvania Ave, N.W.
Washington, DC 20460