UNITED STATES DISTRICT COURT
DISTRICT OF ILLINOIS
CENTRAL DISTRICT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff ) | |
| ) | CIVIL ACTION NO. |
| ) | |
| vs. ) | |
| ) | |
| BUNGE NORTH AMERICA, INC., BUNGE ) | FILED |
| NORTH AMERICA (EAST), L.L.C., ) | OCT 26 2006 |
| BUNGE NORTH AMERICA (OPD WEST), ) | |
| INC., AND BUNGE MILLING, INC. ) | JOHN M. WATERS, Clerk |
| ) | U.S. DISTRICT COURT |
| Defendants. ) | CENTRAL DISTRICT OF ILLINOIS URBANA, IL |

**COMPLAINT IN INTERVENTION**

NOW COMES, the Plaintiff-Intervener, People of the State of Illinois, by the authority of LISA MADIGAN, the Attorney General of the State of Illinois, on her own motion and at the request of the Illinois Environmental Protection Agency ("Illinois EPA"), and complaining of the Defendants Bunge North America, Inc. ("Bunge"), and its wholly owned subsidiary, Bunge Milling, Inc. ("Bunge Milling"), alleges:

**NATURE OF ACTION**

1.   This is a civil action brought by the United States against Bunge, Bunge East, Bunge OPD West, and Bunge Milling, as well as Bunge North America (East), L.L.C., and Bunge North America (OPD West), Inc., for violations of the Clean Air Act ("CAA"), 42 U.S.C. § 7401 et seq., Part C of Title I of the Act, 42 USC §§ 7470-7492, Prevention of Significant Deterioration ("PSD"); certain New Source Performance Standards ("NSPS"), 42 USC § 7411, 40 CFR Part 60; Title V of the Act, 42 USC §§ 7661-7661f, Permits; the state or federal

RECEIVED
OCT 26 2006
JOHM M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

implementation plan ("SIP") for Illinois which incorporates and/or implements the above listed federal requirements; and SIP permitting programs for construction and operation of new and modified stationary sources of air pollution. .

2. At all times relevant to this Complaint, Bunge owned and operated a soybean processing plant located in Cairo, Illinois, and Bunge Milling owned and operated a soybean processing plant and a corn dry mill extraction plant located in Danville, Illinois.

3. Plaintiff-Intervenor, People of the State of Illinois, seeks an injunction ordering Bunge and Bunge Milling to comply with the federal CAA and the Illinois Environmental Protection Act requirements and regulations promulgated thereunder, and civil penalties for the Defendants' past and ongoing violations pursuant to Section 42 of the Illinois Environmental Protection Act, 415 ILCS 5/42.

## NOTICE TO STATE

4. The United States provided notice to the Illinois Environmental Protection Agency, in accordance with Section 1213(a)(1) of the CAA, 42 U.S.C. § 7413(1)(1), and as required by Section 113(b) of the CAA, 42 U.S.C. 7413(b).

## JURISDICTION AND VENUE

5. This Court has jurisdiction to hear this civil action brought by the State pursuant to Rule 24 of the Federal Rules of Civil Procedure.

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and Section 113(b) of the CAA, 42 UCS § 7413(b). The State, through the delegated authority of the SIP and permitting programs, has the responsibility of enforcing the standards as promulgated under the CAA.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and

Section 113(b) of the CAA, 42 U.S.C. § 7413(b), because Bunge Milling, which is a subsidiary of Bunge, owns and operates a facility in Vermilion County within this District.

## DEFENDANTS

8. Bunge is a New York corporation and a subsidiary of Bunge N.A. Holdings, Inc. Bunge is a leading oilseed processor and corn dry miller and a leading U.S. exporter of soybeans and soybean-derived products (meal and oil). Bunge Milling, an Illinois corporation, is a wholly-owned subsidiary of Bunge.

9. Each Defendant is a "person" as defined in Section 302(e) of the CAA, 42 U.S.C. § 7602(e), and the federal and state regulations promulgated pursuant to these statutes.

## STATUTORY AND REGULATORY BACKGROUND

10. The CAA established a regulatory scheme designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

11. Section 109 of the CAA, 42 U.S.C. § 7409, requires the Administrator of the United States Environmental Protection Agency ("EPA") to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS" or "ambient air quality standards") for certain criteria air pollutants. The CAA requires that primary NAAQS be adequate to protect the public health, and that secondary NAAQS be adequate to protect the public welfare, from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air. Criteria pollutants pertinent to this Complaint include nitrogen oxides ("$NO_x$"), ozone, sulfur dioxide ("$SO_2$"), carbon monoxide ("CO"), particulate matter ("PM"), particulate matter with an aerodynamic diameter less than or equal to ten micrometers ("$PM_{10}$"), and volatile organic compounds ("VOCs"). The NAAQS promulgated by the

Administrator pursuant to Section 109 of the CAA are set forth at 40 C.F.R. Part 50.

12. Section 110 of the CAA, 42 U.S.C. § 7410, requires each state to adopt and submit to the EPA for approval a SIP that provides for the attainment and maintenance of the NAAQS.

13. Under Section 107(d) of the CAA, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. These designations have been approved by EPA and are located at 40 C.F.R. Part 81. An area that meets the NAAQS for a particular pollutant is classified as an "attainment" area for that pollutant; one that does not is classified as a "non-attainment" area.

### Prevention of Significant Deterioration

14. Part C of Title I of the CAA, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration ("PSD") of air quality in those areas designated as attaining the NAAQS standards. These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision-making process. These provisions are referred to herein as the "PSD program."

15. Section 165(a) of the CAA, 42 U.S.C. § 7475(a), prohibits the construction and subsequent operation of a major emitting facility in an area designated as attainment unless a PSD permit has been issued and any air pollution controls required by the permit are installed and operated. Section 169(1) of the CAA, 42 U.S.C. § 7479(1), defines "major emitting facility"

for certain listed stationary sources, such as oilseed processing plants, as a source with the potential to emit 250 tons per year ("TPY") or more of any criteria air pollutant.

16.     As set forth at 40 C.F.R. § 52.21(k), the PSD program generally requires a person who wishes to construct or modify a major emitting facility in an attainment area to demonstrate, before construction commences, that the proposed construction or modification will not cause or contribute to air pollution in violation of any ambient air quality standard or any specified incremental increase.

17.     As set forth at 40 C.F.R. § 52.21(a), any major emitting source in an attainment area that intends to construct a major modification must first obtain a PSD permit. "Major modification" is defined at 40 C.F.R. § 52.21(b)(2)(I) as any physical change in or change in the method of operation of a major stationary source that would result in a significant net emission increase of any criteria pollutant subject to regulation under the Act. "Significant" is defined at 40 C.F.R. § 52.21(b)(23)(I) in reference to a net increase or the potential of a source to emit any of the following criteria pollutants, at a rate of emissions that would equal or exceed any of the following: 40 TPY of $NO_x$; 40 TPY of VOCs; 40 TPY of $SO_2$, 100 TPY of CO, 15 TPY of $PM_{10}$, or 25 TPY of PM.

18.     As set forth at 40 C.F.R. § 52.21(j), a new major stationary source or a major modification in an attainment area must install and operate best available control technology ("BACT") for each pollutant subject to regulation under the CAA that the source would have the potential to emit in significant quantities.

19.     Section 161 of the CAA, 42 U.S.C. § 7471, requires SIPs to contain emission limitations and such other measures as may be necessary, as determined under the regulations promulgated pursuant to these provisions, to prevent significant deterioration of air quality in

attainment areas.

20. A state may comply with Section 161 either by being delegated by EPA the authority to enforce the federal PSD regulations set forth at 40 C.F.R. § 52.21, or by having its own PSD regulations, which must be at least as stringent as those set forth at 40 C.F.R. § 51.166, and are approved as part of the SIP by EPA.

21. Pursuant to Section 110 of the CAA, 42 U.S.C. § 7410, portions of the Illinois SIP, implementing Section 9(b) of the Illinois Environmental Protection Act, 415 ILCS 5/9(b), and 35 Illinois Administrative Code ("Ill. Adm. Code") § 201.141 and Parts 212, 215, 216 and 217, have been submitted to, and approved by, EPA.

22. Pursuant to Section 110 of the CAA, 42 U.S.C. § 7410, the Illinois Operating Permit Program was submitted to EPA, and has been approved. Pursuant to EPA's approval of the Illinois Operating Permit Program, certain air permits issued by Illinois are Federally Enforceable State Operating Permits ("FESOPs") and are also enforceable by the State of Illinois pursuant to Section 9 of the Illinois Environmental Protection Act, 415 ILCS 5/9.

23. 40 C.F.R. § 52.23 provides, *inter alia*, that any failure by a person to comply with any approved regulatory provision of a SIP or a FESOP shall render such person subject to enforcement action pursuant to Section 113 of the CAA, 42 U.S.C. § 7413.

### New Source Performance Standards

24. Section 111 of the CAA, 42 U.S.C. § 7411, requires EPA to promulgate standards of performance for certain categories of new air pollution sources, New Source Performance Standards ("NSPS"). Pursuant to Section 111(b), EPA promulgated general regulations applicable to all NSPS source categories. Those general regulations are set forth at 40 C.F.R. Part 60 Subpart A.

25. Once an NSPS has been promulgated, Section 111(e) of the CAA, 42 UCS § 7411(e), makes it unlawful for any owner or operator of any new source subject to the NSPS to operate the source in violation of the standard.

26. 40 C.F.R. Part 60, Subpart A, contains the general provisions applicable to all NSPS sources, including the obligation to conduct performance tests at each subject source. Subpart A provides that a new standard of performance shall apply to any affected facility at which construction commenced after the promulgation of the standard, or if earlier, after the date of publication of a proposed standard. Subpart A also requires operators to provide notice of the date of construction and operation of an affected facility.

27. 40 C.F.R. § 60.2 defines an "affected facility," with reference to a stationary source, as any apparatus to which a standard is applicable.

## Injunctive Relief and Civil Penalties

28. Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes both injunctive relief and civil penalties of up to $25,000 per day for each violation prior to January 30, 1997, and civil penalties of up to $27,500 per day for each violation from January 31, 1997 through March 15, 2004, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, and civil penalties of up to $32,500 per day for each violation that occurs after March 15, 2004.

29. Sections 111, 112, 165 and 173 of the CAA and the federal regulations adopted pursuant thereto are enforceable by the Plaintiff-Intervenor pursuant to Section 9.1(d) of the Illinois Environmental Protection Act, 415 ILCS 5/9.1(d). Pursuant to Section 42 of the Illinois Environmental Protection Act, 415 ILCS 5/42, Plaintiff-Intervenor may commence a civil action for injunctive relief and civil penalties not to exceed $50,000 per violation plus $10,000 per each

day such violation may continue for violations of the Illinois Environmental Protection Act.

## FIRST CLAIM FOR RELIEF
### PSD Violations at Soybean Processing and Corn Dry Mill Extraction Plants

30. Paragraphs 1 through 29 are re-alleged and incorporated by reference.

31. At all relevant times, the Defendants owned and operated soybean processing and/or corn dry mill extraction plants in Danville, Illinois and Cairo, Illinois.

32. The Defendants produce crude vegetable oil and meal products at their plants by removing oil from the oilseeds or corn germ through direct contact with an organic solvent comprised of hexane isomers.

33. Sources of VOCs emissions at the plants in Danville and Cairo include the extractor vessels, the solvent recovery system, dryers and coolers, residual solvent in meal and oil products, leaking equipment components, storage tanks, and wastewater treatment equipment.

34. The plants in Danville and Cairo are major sources of VOCs, subject to the PSD requirements of 40 C.F.R. Part 52.

35. EPA and Illinois EPA have conducted assessments of the Danville and Cairo plants including site inspections, review of permitting history and emissions data, and analysis of other relevant information obtained from Defendants concerning construction and operation of the facilities.

36. The plants in Cairo and Danville are major emitting facilities as defined in Section 169(1) of the CAA or have subsequently been modified to increase their emission of one or more criteria air pollutants over the 250 TPY threshold, which is defined as a "major modification" under 40 C.F.R. § 52.21 (b)(1)(i)(c).

37. Since the initial construction or major modification of the plants in Cairo and Danville, the Defendants have been in violation of Section 165(a) of the CAA, of 40 C.F.R. §52.21, and of the corresponding Illinois SIP by failing to undergo PSD review for numerous modifications which caused significant emissions increases of criteria pollutants, by failing to obtain a permit, and by failing to install the BACT for control of such criteria air pollutants.

38. Unless restrained by an Order of the Court, these violations of the Act and the implementing regulations are likely to continue.

### SECOND CLAIM FOR RELIEF
### New Source Performance Standards
### Violations

39. Paragraphs 1 through 29 are re-alleged and incorporated by reference.

40. The Cairo and Danville plants each include "stationary sources" and "new sources," within the meaning of the terms as defined at Section 111(a) of the CAA, which are thereby "affected facilities" subject to the performance standards and requirements of NSPS.

41. The Defendants own and operate industrial-commercial-institution steam generating units that commenced construction, modification, or reconstruction after June 19, 1984, with the heat input capacity from fuels combusted in the steam generating unit of greater than 29 megawatts ("MW") (100 million Btu/hour). These units are subject to the performance standards of 40 CFR §§60.40b through 60.49b (Part 60 Subpart Db).

42. The Defendants own and operate volatile organic liquid storage vessels, including petroleum liquid storage vessels, for which construction, reconstruction, or modification commenced after July 23, 1984. These vessels are subject to the performance standards set forth in 40 C.F.R. §§ 60.110b through 60.117b (Part 60 Subpart Kb).

43. The Defendants own and operate grain terminals and storage elevators which commenced construction, modification, or reconstruction after August 3, 1978. These facilities are subject to the performance standards under 40 C.F.R. §§ 60.300 through 60.304 (Part 60 Subpart DD).

44. The Defendants own and operate coal preparation plants which process more than 200 tons per day and commenced construction or modification after October 24, 1974. These plants are subject to the performance standards under 40 C.F.R. §§ 60.250 through 60.254 (Part 60 Subpart Y).

45. EPA and Illinois EPA have conducted assessments of the Defendants' NSPS "affected facilities" described in Paragraphs 40 through 45. Based upon these assessments, information and belief, it is alleged that the Defendants failed to meet one or more of the emissions testing, emissions monitoring, operations monitoring, emissions limits, recordkeeping and reporting standards set forth in 40 C.F.R. Part 60, Subparts Db, Dc, DD, Kb, and/or Y, in violation of Section 111 of the CAA.

46. Unless restrained by an Order of the Court, these violations of the Act and the implementing regulations are likely to continue.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff-Intervenor, the People of the State of Illinois, respectfully requests that this Court:

A. Order Bunge and Bunge Milling to immediately comply with the state and federal statutory and regulatory requirements cited in this Complaint, under the Clean Air Act;

B. Order Bunge and Bunge Milling to take appropriate measures to mitigate the effects of their violations;

C.  Assess civil penalties against Bunge and Bunge Milling for up to the amounts provided by the CAA; and

D.  Grant the People of the State of Illinois such other relief as this Court deems just and proper.

        Respectfully submitted,

        PEOPLE OF THE STATE OF ILLINOIS,
        *ex rel.* LISA MADIGAN,
        Attorney General of the
        State of Illinois

        MATTHEW J. DUNN, Chief
        Environmental Enforcement/Asbestos
           Litigation Division

BY: _____
        THOMAS DAVIS, Chief
        Environmental Bureau
        Assistant Attorney General

OF COUNSEL:
JAVONNA HOMAN
500 South Second Street
Springfield, Illinois 62706
217/782-9031
Dated: August 4, 2006